ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

APR 2 5 2006

LUTHER D. THOMAS, Clerk
By _____ Deputy Clerk

MS. JANE KIDD, ANDREA SUAREZ,         )
DR. MURRAY BLUM,                      )
AND ANN BLUM,                         )
                                      )
            Plaintiffs,               )
                                      )
     v.                               )     CIVIL ACTION
                                      )     FILE NO. _____
                                      )
CATHY COX, individually and in        )     **1:06-CV-0997**
her official capacities as Secretary of State  )
of Georgia and Chair of the Georgia   )
Elections Board,                      )
                                      )
            Defendant.                )
                                      )

## COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

This is an action to declare unconstitutional and to enjoin the enforcement of

the 2006 amendment to O.C.G.A. § 28-2-2 to the extent that it reapportions State

Senate Districts 46, 47 and 49 (hereafter "SB 386"), because SB 386 (1)

discriminates against voters residing within proposed Senate District 47 by

creating Senate Districts that are not as nearly equal in population as practicable, in

violation of the equal protection clauses of the Fourteenth Amendment to the

United States Constitution, Article I § 1 ¶ 2 of the Georgia Constitution, 42 U.S.C.

134472                                 1

§§ 1983 and 1988; (2) has the purpose and effect of unlawfully burdening the

associational and representational rights of Democratic voters residing in Clarke

County based on their political viewpoints, as reflected by their past voting

behavior and patterns, in violation of the First and Fourteenth Amendments to the

United States Constitution, Article I § 1 ¶¶ 5 and 9 of the Georgia Constitution, 42

U.S.C .§§ 1983 and 1988; and (3) violates Article III § 2 ¶ 2 of the Georgia

Constitution, which provides that the apportionment of the Legislature shall be

changed only "*as necessary* after each United States decennial census" (emphasis

added).

1.

The plaintiffs are:

(a)     **Ms. Jane Kidd**

Ms. Kidd is citizen of the United States and of Georgia, and is a

registered voter residing at 410 Hampton Court in Athens-Clarke

County, Georgia, in what is currently Senate District 46.  Ms. Kidd

currently represents a portion of Athens-Clarke County in the Georgia

General Assembly, as she was elected from House District 115.  Ms.

Kidd possesses all of the requisite qualifications to run for the Georgia

State Senate in District 46, and had announced her intention to run for

that seat prior to the enactment of SB 386. Ms. Kidd intends to run for the Democratic Party nomination in District 46 if SB 386 is declared invalid.

(b)    **Ms. Andrea Suarez**

Ms. Suarez is a citizen of the State of Georgia, is a registered voter and resides at 1067 College Station Road, in Athens-Clarke County. If SB 386 takes effect, Ms. Suarez will be transferred from the 46th State Senate district to the 47th State Senate district. In past elections, Ms. Suarez has consistently voted for Democratic candidates.

(c)    **Dr. Murray Blum**

Dr. Blum is a citizen of the State of Georgia, is a registered voter and resides at 475 Ponderosa Drive, in Athens-Clarke County. If SB 386 takes effect, Dr. Blum will be transferred from the 46th State Senate district to the 47th State Senate district. In past elections, Dr. Blum has consistently voted for Democratic candidates.

(d)    **Ms. Ann Blum**

Ms. Blum is a citizen of the State of Georgia, is a registered voter and resides at 475 Ponderosa Drive, in Athens-Clarke County.

If SB 386 takes effect, Ms. Blum will be transferred from the 46th State Senate district to the 47th State Senate district. In past elections, Ms. Blum has consistently voted for Democratic candidates.

2.

The Defendant is:

**Cathy Cox**, who is sued individually and in her official capacity as Secretary of State of the State of Georgia, in which capacity she is the Chair of the State Election Board by O.C.G.A. § 21-2-30(d), and has been designated as the Chief Election Official for purposes of the federal Help America Vote Act of 2002 by O.C.G.A. § 21-2-50.2, and also the Chief Election Official for purposes of the National Voter Registration Act of 1993 by O.C.G.A. § 21-2-210.

### Jurisdiction and Venue

3.

This case arises under the Constitution and laws of the United States and of Georgia. This Court has subject matter jurisdiction of this action and the intervention claims under 28 U.S.C. §§ 1331, 1343(a)(3) & (4) and 28 U.S.C. § 1367(a), and 42 U.S.C. §§ 1971(d), 1973j(f) and 1983. This Court has jurisdiction to grant both declaratory and injunctive relief under 28 U.S.C. §§ 2201

and 2102. Venue in this district and division is proper under 28 U.S.C. § 1391(b) because the defendant, Secretary of State Cathy Cox, resides in this district and division.

## Three Judge District Court

4.

A three judge district court must be promptly convened under 28 U.S.C. § 2284(a) to hear and decide plaintiffs' claims that SB 386 is unconstitutional. SB 386 is "an apportionment of [a] state-wide legislative body" namely the Georgia State Senate. SB 386 apportioned all 56 districts as a matter of **statute,** by incorporating by reference, 53 of the 56 districts set forth in the Order of the United States District Court in *Larios v. Cox* (N.D.Ga. Civil Action No. 1:03-CV-693-CAP) dated April 30, 2004, and drawing new district lines for three other Senate districts (Districts 46, 47 and 49) in an unconstitutional manner. SB 386 provides in pertinent part as follows:

> Except as otherwise provided in this paragraph, the districts for Senate Districts 1 through 56 shall continue to be those districts as provided in the order of the United States District Court in the case of Larios v. Cox. On and after January 1, 2007, Senate Districts 46, 47, and 49 shall be as described in this paragraph and further identified 'Plan Name: SFCamd47p2 Plan Type: Senate user: Blake Administrator: S047', which report is attached to the 2006 Act amending this Code section and is made a part of that Act and this paragraph.

## Declaratory Judgment

### 5.

A genuine dispute exists as to the validity of SB 386 which affects the rights of plaintiffs and tens of thousands of other Georgia citizens residing in State Senate Districts 46, 47 and 49 in Clarke, Jackson, Oglethorpe, Madison and Walton Counties, and demands immediate and urgent resolution by the Court prior to the qualifying for candidates to seek election to Senate Districts 46, 47 and 49, which begins at 9:00 a.m. on April 24 and ends at noon on April 28, 2006.

### 6.

As alleged in paragraph 1, plaintiff Jane Kidd is a citizen of Clarke County, Georgia and is currently serving as a member of the Georgia House of Representatives from House District 115.

### 7.

Ms. Kidd is also a resident of State Senate District 46, and prior to the enactment of SB 386, she had announced her intention to vacate her seat in the State House and to qualify and run for election to the Georgia Senate from Senate District 46.

8.

The recent enactment by the General Assembly of SB 386 has created great uncertainty for Ms. Kidd, and for the citizens of Clarke, Jackson, Oglethorpe, Madison and Walton Counties because SB 386 purports to redraw, on the eve of qualifying, the district lines of Senate Districts 46, 47 and 49, so as to remove a large number of predominately Democratic voting precincts in Clarke County from Senate District 46 and place these Democratic precincts in Senate District 47, in violation of the Constitutions of the United States and of Georgia.

9.

Plaintiff Kidd and the other plaintiffs are in need of a determination by the Court of the validity of SB 386 to guide and protect Ms. Kidd from uncertainty and insecurity in deciding (a) to qualify as a candidate for election from the existing Senate District 46, which was created March 24, 2004, by a three-judge Federal District Court, (b) to qualify for election from the new Senate District 46 created by SB 386, which she believes to be unconstitutional, or (c) to qualify for reelection in the Georgia House from House District 115. If Ms. Kidd is forced to make a decision to qualify without direction from the court, her interests and those of the other plaintiffs, including, but not limited to, her right to run as an incumbent in House District 115, would be jeopardized and put at risk.

## Statement of Facts

## Georgia Law and Senate Redistricting Before SB 386

10.

Prior to 1976, the Georgia Constitution did not have an express provision directing the General Assembly to reapportion state legislative districts or congressional districts after each decennial census. For many years, the Georgia Legislature, like the Legislatures of many other states, refused to reapportion either state legislative districts or congressional districts after each decennial census. As a result of this refusal to reapportion, there were vast differences between the populations of some Legislative districts in Georgia as compared to others, which meant that citizens residing in districts with above average populations were under-represented in the State Legislature, while citizens residing in districts with below average populations had a greater voice and political influence on state government.

11.

In 1962, however, the Supreme Court ruled in *Baker v. Carr,* 369 U.S. 186 (1962), that the failure of states to reapportion state legislative districts constitutes a violation of the guarantee of equal protection of the laws in the Fourteenth Amendment. The decision in *Baker* was followed in 1964 by *Reynolds v. Sims,*

377 U.S. 533 (1964), in which the Supreme Court adopted what is now commonly known as the "one-person-one-vote rule." The Court held that states are required by the Equal Protection Clause of the Fourteenth Amendment to "make an honest and good faith effort to construct districts, in both houses of its legislature, *as nearly of equal population as is practicable*." *Id.* at 577 (emphasis added).

12.

As a result of these decisions and a series of decisions of a three-judge panel of the federal district court, the Georgia Legislature was forced to reapportion both houses of the Georgia General Assembly, as well as the State's congressional districts. *See e.g., Toombs v. Fortson*, 205 F. Supp. 248 (N.D. Ga. 1962) (General Assembly); *Wesberry v. Sanders*, 376 U.S. 1 (1964) (Congress).

13.

When Georgia adopted a new state Constitution in 1976, the framers of the 1976 Constitution decided to cure the omission in earlier state constitutions by adding a provision in the 1976 Constitution requiring the General Assembly to reapportion state House and Senate Districts "*if necessary,* after each United States decennial census." 1976 Const., Art. 3, § 2, ¶ 1 (emphasis added).

14.

This provision from the 1976 Constitution was carried forward into Article

3, Section 2, Paragraph 2 of the 1983 Georgia Constitution and provides as

follows:

> The General Assembly shall apportion the Senate and House
> districts. Such districts shall be composed of contiguous territory.
> The apportionment of the Senate and House of representatives shall be
> changed by the General Assembly *as necessary after each United*
> *States decennial census.*

Ga. Const. Art 3, § 2 ¶ 2 (emphasis added).

## Reapportionment After the 2000 Census

15.

The 2000 census revealed major changes in the relative populations of

Legislative Districts in the Georgia House and Senate since these districts had last

been reapportioned after the 1990 census, which made it *"necessary"* for the

General Assembly, at its first session following the publication of the 2000 Census,

to reapportion those districts in order to make the districts as "nearly equal of

population as is practicable" (*Reynolds v. Sims,* 377 U.S. at 577) under the 2000

Census, and conform them to the Equal Protection Clauses of the Fourteenth

Amendment and Art. III, § 2, ¶ 2 of the Georgia Constitution.

16.

Accordingly, the General Assembly adopted a statute in 2001,

reapportioning the General Assembly, but the 2001 reapportionment did not

become effective because pre-clearance of the 2001 legislative reapportionment

was denied by a federal district court in the District of Columbia under Section 5 of

the Voting Rights Act . *See Georgia v. Ashcroft*, 195 F. Supp.2d 25 (D.D.C.

2002).

17.

The rejection of the 2001 reapportionment by the district court made it

"*necessary*" for the General Assembly to once again reapportion state House and

Senate Districts at its next session which began in January 2002.  A new

reapportionment was adopted on April 11, 2002 (the "2002 legislative

apportionment act"), and became effective upon pre-clearance by the Department

of Justice under Section 5 of the Voting Rights Act, and governed the 2002

elections for the Georgia House and Senate.

**The Court in *Larios* Struck Down the 2002 Senate District Plan and Created an Interim Plan**

18.

However, the 2002 legislative apportionment act was declared unconstitutional on February 10, 2004, by a three-judge panel in the Northern District of Georgia on the ground that the House and Senate Districts were not "as nearly equal in population as practicable," and therefore, violated the United States Constitution's one-person-one-vote requirements. *See Larios v. Cox*, 300 F. Supp.2d 1320 (N.D. Ga. 2004).

19.

The Court in *Larios* gave the General Assembly until March 1, 2004, to adopt a new reapportionment statute, and the General Assembly failed to do so.

20.

The Court in *Larios* then appointed a Special Master to create Legislative apportionment plans for the State of Georgia, giving the Special Master explicit instructions to ensure that the Legislative Districts created by the Special Master would adhere to the strictures of the Constitution and other governing law.

21.

The Special Master created the plans and, after hearing argument from numerous interested parties regarding the specifics of the plan, on March 24, 2004,

the Court in *Larios* entered an order adopting an amended version of the Special Master's plan that reapportioned both the state House and the state Senate Districts in Georgia and ruling that the districts were as nearly equal in population as was practicable, as required by *Reynolds v. Sims*, and adhered to all other relevant Constitutional and legal requirements. The Senate District plan created by order of the Court in *Larios* is hereinafter referred to as the "Federal Court Plan."

22.

There were no appeals or challenges to the Federal Court Plan, which was valid and binding on the state and governed the 2004 elections for the Georgia Senate. A copy of the district map associated with the Federal Court Plan is attached hereto as Exhibit A.

**The 2004 Election in Clarke County and in Senate Districts 46, 47 and 49**

23.

Under the Federal Court plan, Senate District 46 was far more competitive between Democrats and Republicans than neighboring Districts 47 and 49, which vote Republican consistently and overwhelmingly. Indeed, in the 2004 election, Brian Kemp, the Republican incumbent in District 46 received 51.6% of the vote. *See* http://www.sos.state.ga.us/elections/election_results/2004_1102/senate.htm.

By contrast, the Republican in District 47 received over 71%, and the Republican in District 49 ran unopposed and received 100% of the vote. *Id.*

24.

The reason for this competitiveness is that District 46 encompasses all of Athens-Clarke County, and voters living in Athens Clarke-County tend to vote for Democratic candidates more than voters in the rest of the state. For example,

(a) In 2004 not a single Republican won a county election in Clarke County, while 11 Democrats were elected to county office.

(b) In the 2004 presidential race, while the state of Georgia, overall, supported Republican Candidate George Bush over Democrat John Kerry by a margin of 58% to 41%, Athens Clarke County supported Kerry with 58% of the its votes. Clarke County election results, *available at* http://www.athensclarkecounty.com/elections/results_g04.html; State of Georgia election results, *available at* http://www.sos.state.ga.us/elections/election_results/2004_1102/feder al.htm

(c) Indeed, while Republican State Senator Brian Kemp received 51.6% of the total vote in Senate District 46, he lost to his Democratic

opponent in Clarke County by almost 6,000 votes and received less than 42% of Clarke County's total.

25.

After the 2004 election, Brian Kemp, the current Republican incumbent in District 46, informed the Republican leadership in the General Assembly that he did not intend to seek re-election in District 46, but instead would run in the statewide election for Agriculture Commissioner. Brandon Larrabee, "House Still Likely to OK Redistricting" *Athens Banner-Herald*, Jan. 26, 2006.

26.

After Kemp's announcement, Democratic State Representative Jane Kidd announced her candidacy for Senate District 46 on May 20, 2005.

27.

On October 3, 2005, Kemp's brother-in-law, Bill Cowsert, also announced that he intended to seek the Republican nomination for the seat being vacated by Kemp in District 46.

28.

Kemp and the other members of the Republican leadership in the Legislature knew that it was very likely that Kemp's brother-in-law, Cowsert, would be defeated by Jane Kidd in a head-to-head election because Representative Kidd

defeated Cowsert in 2004 in a race for House District 115, with Kidd receiving 56% of the vote. *See*

http://www.athensclarkecounty.com/elections/results_g04.html.

29.

In order to prevent a second loss by Republican Cowsert to Democrat Kidd in the highly competitive 46th District, the Republican majority created a reapportionment scheme to split Clarke County and distribute its traditionally Democratic-leaning voters among the predominantly Republican Senate Districts surrounding Clarke County. In addition, the plan would specifically divide House District 115, placing certain populous and Democratic-leaning sections of Representative Kidd's current district into the 47th Senate District, while Representative Kidd's residence would remain in the 46th. The objective, of course, was to remove as many Democratic voters (Kidd's political base) as possible from the 46th Senate district. Particularly because those very neighborhoods and voters had already elected Kidd as their State Representative instead of the candidate favored by the Republicans, Senator Kemp's brother-in-law Bill Cowsert.

## The Sponsors of the Plan to Divide Clarke County Kept the Plan Secret Prior to Its Introduction in the State Senate

30.

SB 386 was kept secret until the day it was introduced in committee. There was not a single public meeting in any of the areas affected, nor did the sponsors of the bill notify the Mayor of Athens Clarke-County, the Athens-Clarke County Commission, or either of the State Representatives elected from Athens-Clarke County.

31.

Once they discovered the existence of the bill, Clarke County's State Representatives, Keith Heard and Jane Kidd, both Democrats, vehemently opposed the bill.

32.

On January 23, 2006, after the bill had passed the Senate, the Mayor of Athens-Clarke County, the county's elected Tax Commissioner, and a majority of the Athens-Clarke County Commission, wrote a joint letter to Governor Perdue registering their "strong opposition" to the bill and asking that the letter be considered "an official protest and condemnation of both the bill itself and the lack of openness and candor demonstrated by those involved" in its creation.

33.

On January 25, 2006 the Athens Clarke-County Commission adopted a Resolution condemning SB 386 and noting that "the citizens of Athens-Clarke County were not consulted, informed or notified" that any plan to redistrict was going to be considered, and that the bill was proposed "without the benefit of any local discussion, input or consideration."

34.

Indeed, Senator Ralph Hudgens, the Bill's sponsor and the incumbent in District 47, represented in the Senate Reapportionment Committee that the change had been requested by the Madison County Commission. The truth is, however, that SB 386 was never submitted to the current Madison County Commission for its endorsement or approval. As one Madison County Commissioner stated "It possibly may have been brought up and discussed at one of the Republican party meetings . . . [but] we have never signed off on anything." Blake Aued "Informed? No, say an ex- and current commissioner," *Athens Banner-Herald*, March 2, 2006; *see also* Blake Aued, "No new remap bid by county: redistricting not included in current leader's wish list", *Athens Banner-Herald*, Jan. 27, 2006.

## The General Assembly Adopted SB 386, and Drastically Altered The Federal Court Plan

35.

Senator Ralph Hudgens introduced SB 386 in the Senate Reapportionment Committee on the first day of the 2006 Legislative session, proposing that 3 of the 54 state Senate Districts be redrawn. The proposed reapportionment of Senate Districts 46, 47 and 49 by SB 386 was not necessary, because the *Larios* Court had adopted a constitutional state-wide plan only two years earlier and was an unprecedented departure from past practice.

36.

SB 386 drastically alters Senate Districts 46 and 47 by (1) splitting Athens-Clarke County (the smallest county in Georgia, which had previously been entirely within District 46 and has never been divided before), between two districts, Districts 46 and 47, (2) moving a precinct in Madison County from the 46th to the 47th District, (3) moving all of Oglethorpe County from the 46th to the 47th, and (4) moving the portions of Walton County that had been in District 47 into District 46. A copy of the SB 386 senate district map is attached as Exhibit B.

134472

19

37.

SB 386 passed by virtually identical party-line votes of both houses of the

Republican-dominated General Assembly and was signed into law by the

Republican Governor, Sonny Perdue, on February 28, 2006.

38.

SB 386 was an unprecedented mid-decade reapportionment that replaced an

undeniably valid, properly-apportioned State Senate map, and SB 386 was adopted

in violation of the Article 3, § 2 ¶ 3 of the Georgia Constitution, which allows the

Legislature to reapportion only "*as necessary* after each United States decennial

census." Ga. Const. Art. 3 § 2 ¶ 3 (emphasis added).

39.

SB 386 represents the fourth Senate plan governing these districts since

2000. If SB 386 governs the 2006 election, voters in this part of the state would

have voted under a different Senate plan in each and every one of the four elections

held this decade.

## The Purpose of SB 386 Was, And Is,
## To Split the Concentration of Democratic Voters in Athens-Clarke County
## To Guarantee a Republican Victory in Senate District 46

40.

The Court in *Larios* recognized that, in Georgia, the

combination of technology and political data available to legislators and [reapportionment] plan drafters also allowed for sophisticated analyses of political performance, so that maps could be drawn and then immediately analyzed politically. Thus in drafting and considering their proposed maps, members of both houses relied on political performance projections, indicating the percentage of votes Democrats and Republicans would likely receive in future elections based upon an assessment of past election results.

*Larios*, 300 F. Supp. 2d at 1324.

41.

Such political performance data was available to and used by the Republican majority in the General Assembly in adopting SB 386.

42.

The Republican majority in the General Assembly used the available political performance data to draft SB 386, and adopted SB 386 for the purpose of making it more difficult or less likely for Jane Kidd or any other Democrat to be elected from Senate District 46, which otherwise would have been an extremely competitive district, by splitting Athens-Clarke County's traditionally Democratic voters into two districts dominated by Republicans, in order to reduce their political influence within any one Senate District and deny them representation in the General Assembly.

43.

By splitting Athens-Clarke County between two Senate Districts, the

Republican majority diluted the influence and power of Democratic voters in

Clarke County to elect a Democrat to the Senate for the purpose of guaranteeing

insofar as possible the election of a Republican candidate in the previously

competitive 46th Senate District without harming Republican chances in the 47th or

49th, which had large Republican majorities.

44.

Indeed, according to the political performance data supplied by the Office of

Legislative Reapportionment, SB 386 created districts that, in 2004, voted for

Republican candidates as follows: (the percentage reflects the percentage of

Republican votes out of the total votes cast)

District 46 -- 57.49% Republican votes

District 47 – 65.83%

District 49 – 68.16%

## The Republican Majority in the General Assembly Adopted SB 386 with a Series of Straight Party-Line Votes

45.

In the Republican-dominated Legislature, not only was SB 386 introduced

without any consultation with any Democrat elected to represent the areas affected,

and passed without the support of a single Democrat from the area, but from beginning to end, the process of the bill's passage was wholly partisan:

(a)     On the very first day of the Legislative session, the Republican dominated Senate Reapportionment Committee held a 20-minute hearing on the proposal and pushed it through the committee with a "Do Pass" (rather than a neutral) recommendation. The vote was strictly on party lines, with every Republican supporting it and every Democrat voting to stop it.

(b)     The bill passed the Republican-dominated Senate based upon a straight party-line vote of 34 to 22. Every Republican in the State Senate voted in favor of SB 386, and each of the 22 Democratic Senators voted against the bill.

(c)     When the bill went to the House of Representatives, the Republican controlled Reapportionment Committee again passed the bill through committee based on a straight party line vote.

(d)        The Bill then was passed in the House of Representatives,

without a single dissenting Republican vote, and with the votes

of only 4 of the 79 Democrats.

46.

All told, SB 386 was passed through two committees and the full

membership of both the Senate and the House of the State Legislature without a

single dissenting vote by a Republican.

47.

Indeed, when the bill was called to the floor of the Republican-dominated

House, the party votes were so tightly controlled that the Republican Majority

Leader, Jerry Keen, stated from the public well of the House that "I know how this

will go," and bragged that he could predict the outcome "within two votes." In

presenting the bill, the Republican Chairperson of the House Reapportionment

Committee, Bobby Franklin, stated that the bill would be debated even though "we

all know how we're going to vote."

## The Sponsors And Supporters Have Stated
## the Partisan Purpose Of SB 386

48.

Senator Hudgens, the current incumbent in District 47 and the Bill's

sponsor, told the January 2006 meeting of the Madison County Republican Party

that, "If you look at the people who are against this plan, they are against it *because it's bad for the Democratic Party . . .*", "Perdue signs Hudgens' redistricting plan," (March 8, 2006) *available at* http://www.mainstreetnews.com/2006/March/M0308E.html (emphasis added).

49.

As the *Oconee Enterprise* reported, Brian Kemp, the current Republican Senator in District 46 (who, under Senate rules was required to support the bill in order for it to be considered), admitted that splitting Clarke County would reduce its political power and increase the power of neighboring counties, including Oconee County. Specifically, Kemp stated that "This bill keeps you (Oconee County) in the 46th district, but about 100,000-plus [sic] people would be in another district, so Oconee will have a stronger voice." Billy Vaughn, "Redistricting plan give Oconee stronger voice," *Oconee Enterprise*, January 19, 2006, at A7.

### The Purported Purpose Of the Bill (to Unify Madison County) Was Completely Pretextual

50.

According to the Bill's sponsor the stated purpose of SB 386 was to place Madison County wholly within a single Senate District.

51.

That this purported purpose is a pretext is demonstrated by the fact that the

Republican dominated House Reapportionment Committee rejected the

FairMadison plan that would also have placed Madison County entirely within a

single Senate District, but without dividing Clarke County.  Moreover, any reasons

for placing Madison County within a single district are equally applicable to

Clarke County, which had never been divided in any previous reapportionment.

**The House Reapportionment Committee
Rejected the "Fair Madison" Alternative, Which Would Have Achieved
the Purported Purpose of SB 386**

52.

The Legislature's rejection of the "FairMadison" alternative bill introduced

in the House Reapportionment Committee shows that the true purpose of SB 386

was not to unify Madison County, but was rather to dilute the power of Democratic

voters in Clarke County, and ensure Republican victory in Senate District 46.

53.

Representative Barbara Massey Reese, a Democratic Representative from

Chattooga County who serves on the House Reapportionment Committee,

introduced an alternative bill (the "FairMadison Plan"), which would have

achieved the alleged purpose of the Bill by ensuring that not only Madison County,

but Clarke County, as well, would not be split between districts, while at the same time providing districts that were more nearly equal in population than those created by SB 386.

54.

The FairMadison Plan (a) maintained a unified Clarke County, **and** (b) unified Madison County in a single district, (c) created districts that were more nearly equal in population than in SB 386, (d) avoided further splitting of precincts, and (e) without discriminating against voters in Clarke or Madison Counties based on their party affiliation or political viewpoints, as reflected by their historic voting patterns, maintained the competitive nature of Senate District 46.

55.

The FairMadison Plan was rejected in Committee by a straight party line vote, and the only possible explanation for this rejection is that the purpose of SB 386 is not to unify Madison County, but instead is to eliminate the competitive nature of Senate District 46 and ensure a Republican victory in that district.

**On Its Face, SB 386 Violates**
**Constitutional Guarantees of "One Person, One Vote"**

56.

The Court held in *Larios* that the "Constitution of the United States requires

that . . . state Legislative seats be apportioned equally, so as to ensure that the

constitutionally guaranteed right of suffrage is not denied by debasement or

dilution of the weight of a citizen's vote." 300 F. Supp. 2d at 1337 (*citing*

*Reynolds v. Sims*, 377 US. 533, 555, 568 (1964); *Wesberry v. Sanders*, 376 U.S. 1,

7-8 (1964)).

57.

The Court in *Larios* also held that the Constitution provides that, in state

legislative reapportionment, "the invariable objective . . . remains 'equal

representation for equal numbers of people.'" *Id.* at 1337 (*quoting Wesberry v.*

*Sanders*, 376 U.S at 18).

58.

In reapportioning a state Legislature, the Constitution demands that each

state be required to "make an honest and good faith effort to construct districts, in

both houses of its legislature, as nearly of equal population as is practicable."

*Reynolds v. Sims*, 377 U.S. at 577.

59.

In adopting SB 386, the Republican-dominated General Assembly made no effort to create districts as nearly equal in population as were practicable, and willfully and deliberately chose to draw Senate Districts that were less equal in population as reflected by the 2000 census than either of the existing districts established by the Federal Court Plan already in place, or the alternative FairMadison reapportionment bill that was introduced in the House Committee on Reapportionment.

## The Legislature Made No Attempt
## To Create Districts As Nearly Equal In Population As Practicable

60.

Based upon the 2000 Census, Georgia's population was 8,186,453 persons. Because there are 56 Senate seats, the ideal population for each Senate District in Georgia is 146,187 people (*i.e.* the total population divided by the number of Senate Districts).

61.

Under the Federal Court Plan for State Senate Districts 46, 47, and 49, the total populations, as reflected in the 2000 census, were as follows:

- District 46—145,476 persons

- District 47—147,129 persons

- District 49—146,916 persons

The total population variance (*i.e.* the difference between the most populous district and the least populous district) is 1,653 people. As a percentage of the ideal, the total deviation is 1.13%.

### 62.

SB 386 creates districts that are less equal in population than Senate Districts 46, 47 and 48 as drawn by the Court. Indeed, the total population variance between the largest and smallest district under SB 386 is 2,381 people, as opposed to a deviation of only 1,653 between the largest and smallest districts under the Court's Plan. The deviation as a percentage of the ideal is 1.63% as opposed to 1.13%.

### 63.

During deliberations, and before voting on the Bill, this data was provided to Legislators along with copies of the Bill.

### 64.

As Courts have recognized, the technology used by the state of Georgia allows the Legislature to draw redistricting plans "with a deviation of 0 to 1 persons," and makes "perfect equality" among districts "certainly attainable."

134472

*Larios*, 300 F. Supp. 2d at 1320 & 1341. Thus, it would undeniably have been possible for the Legislature to create a map with a smaller deviation, and the Legislature simply chose not to do so.

65.

Indeed, the Republican-dominated House Committee on Reapportionment was provided with the opportunity to adopt the FairMadison Plan that contained districts that were more nearly equal in population than in SB 386, but refused to allow the Bill out of Committee. Under the FairMadison Plan, which was introduced in the House Reapportionment Committee, the "absolute overall range" would have been 1,715 people instead of 2,381 (as under SB 386), and the total percentage deviation from the ideal would have been reduced from 1.63% to 1.17%.

66.

As stated above, despite the fact that this alternative plan would have kept both Clarke and Madison Counties whole, and would create districts that are more equal, the Republicans on the Reapportionment committee rejected the FairMadison proposal by a strict party line vote.

67.

In sum, the Legislature was faced with three options—the Federal Court Plan, the FairMadison proposal, and SB 386. The Legislature, with all of the facts at hand, deliberately chose the least equal of the three. Such a decision is not an honest attempt to create districts as nearly equal in population as practicable.

## The differences in population were not required to further legitimate state interests

68.

The Constitution does not allow deviations in population between districts except as necessary to further politically neutral and legitimate state interests. As the Court noted in *Larios*, "deviations from exact population equality may be allowed in some instances in order to further legitimate state interests such as making districts compact and contiguous, respecting political subdivisions, maintaining the cores of prior districts and avoiding incumbent pairings." 300 F. Supp. 2d at 1337.

69.

The Court also found in *Larios* that Georgia, in particular, has a "strong historical preference … for not splitting counties outside the Atlanta Area, and not splitting precincts, maintenance of core districts, and recognition of communities

of interest." 300 F. Supp. 2d at 1349 (*quoting Abrams v. Johnson*, 521 U.S. 74 99-100 (1997)).

70.

Initially, it is undeniable that there is no constitutional or legal need for new districts at all. SB 386 replaces a Senate District plan that was created by a Special Master based on non-partisan, neutral principles of redistricting and was unanimously approved by the three judge panel in the *Larios* case. No party has alleged that the districts created by the Federal Court Plan were or are unconstitutional. Thus, SB 386 does not address any of the state interests inherent in replacing an invalid, or malapportioned set of districts.

71.

The reapportionment of only three of the fifty-four Senate Districts was not only unnecessary to comply with the equal protection clause of the Constitution, but the population deviations in SB 386 themselves are unnecessary and do not purport to further any of the legitimate state interests identified by the Court in *Larios*.

72.

The population deviations created by SB 386 were not intended to and do not remedy any lack of compactness, or lack of contiguity in Senate Districts. In

addition, SB 386 was not intended to and does not remedy any "pairing of incumbents," as no incumbent is seeking reelection in District 46 or 49, and no other incumbent is "paired."

73.

Moreover, in violation of the legitimate interest in preserving "political subdivisions" and Georgia's "strong historical preference" for not splitting counties outside the Atlanta Area, SB 386 splits Clarke County between two districts for the first time in the county's history.

74.

In violation of the legitimate interest in "preserving the cores of prior districts" and of Georgia's "strong historical preference" for maintaining "core" Senate Districts, SB 386 splits the municipality of Athens-Clarke County, which is by far the largest metropolitan area in Senate Districts 46 and 47, and has provided a core state Senate District for generations.

75.

In violation of this State's "strong historical preference" for not splitting precincts, SB 386 splits an additional precinct that was not split under the Federal Court Plan, and would not be split under the "FairMadison" bill.

76.

In violation of this State's "strong historical preference" for recognizing communities of interest, the line drawn by SB 386 divides members of numerous communities of interest one from the other.  Examples include:

(a)     The line runs directly through the campus at the University of Georgia, severing from the main campus important areas of the University, including almost the entire (but not quite the entire) Poultry Diagnostic Research Center.  Indeed, the line cuts in half the Oconee Forest Park, which is administered by UGA's School of Forestry.

(b)     The line splits Clarke County without respect to the Clarke County Commission districts, where certain people will be represented by the same county commissioners, but different state senators.

(c)     The line was drawn without regard to Clarke County school districts, and even splits the major attendance districts used to determine which of Athens's two high schools a child will attend.  Thus, parents of children at Cedar Shoals or Clarke Central High Schools, will no longer be in the same Senate District as the other parents at their school.

(d)     The line severs all of the students and professors at the University of
Georgia who live in the eastern half of Clarke County from the rest of
the campus, and the students and professors who live in the rest of
Clarke and Oconee Counties, making it difficult to address important
issues affecting the State's flagship university

(e)     The line divides two state House Districts. Districts 115 and 114 were
both included in the same Senate District prior to SB 386, now each of
them will be split among two.

### 77.

Finally, regardless of what the Republican-Controlled General Assembly, or
the Republican Governor may claim, the true purpose of the bill—partisan political
gain for the Republican party—cannot justify the inequality of the Senate Districts
created by SB 386 because, as the Court in *Larios* stated, "the Supreme Court has
never sanctioned partisan advantage as a legitimate justification for population
deviations." 300 F. Supp.2d at 1351.

### 78.

Essentially, the General Assembly ignored the *Larios* Court's clear mandate
for the creation of Constitutional Senate Districts in Georgia, amended the *Larios*

Court's Plan, and in doing so, created districts that violate the very same principles the *Larios* Court outlined in its February 10, 2004 Order.

## Count One

## (Failure to Create Districts as Nearly Equal in Population as Practicable in Violation of Equal Protection of the Law)

79.

The allegations of paragraphs 1 through 78 above are hereby incorporated by reference as allegations of paragraph 79 of Count One of the complaint.

80.

SB 386 is unconstitutional, null and void because the districts are not "as nearly equal of population as is practicable" (*Reynolds v. Sims,* 377 U.S. at 577).

81.

Senate Districts 46, 47 and 49 created by SB 386 are not as equal in population as are the existing Senate Districts 46, 47 and 49 created by the Court in *Larios,* which SB 386 proposes to "amend."

|  | **Federal Court Plan** | **SB 386** |
|---|---|---|
| "Absolute Deviation" between most and least populous of the three districts | 1,653 persons | 2,381 persons |
| Deviation as a percentage of the ideal district | 1.13%. | 1.63% |

82.

The Republican majority also rejected by a party-line vote an alternative plan (the FairMadison Plan) that would have achieved the alleged (but pretextual) objective of SB 386 by putting Madison County in a single Legislative District, without dividing Clarke County, without dividing a single voting precinct, and which would have created Senate Districts that were more nearly equal in population that the districts created by SB 386.

| | FairMadison Plan | SB 386 |
|---|---|---|
| "Absolute Deviation" between most and least populous of the three districts | 1,715 persons | 2,381 persons |
| Deviation as a percentage of the ideal district | 1.17% | 1.63% |

83.

The differences in the populations of the three districts created by SB 386 were not necessary to achieve any of the legitimate state interests that were identified by this Court, "such as making districts compact and contiguous, respecting political subdivisions, maintaining the cores of prior districts and avoiding incumbent pairings." 300 F. Supp.2d at 1337.

## Count Two

## (View Point Discrimination in Violation of the Constitutional Guarantees of Freedom of Speech, Association and Petition)

84.

The allegations of paragraphs 1 through 83 above are hereby incorporated by reference as allegations of paragraph 84 of Count Two of the complaint.

85.

The purpose and effect of SB 386 is to discriminate against and penalize Jane Kidd and the other plaintiffs, and citizens and voters residing in Clarke County based on their political viewpoints and beliefs, as reflected by the past voting history that has tended to favor Democrats over Republicans, and their affiliation with the Democratic Party by making it more difficult, if not impossible, for Democratic voters residing in Clarke County to elect someone to the State Senate who shares their political beliefs and opinions, or is a member of their political party.

86.

Likewise, the purpose and effect of SB 386 is to discriminate *in favor* of those citizens and voters residing in Clarke County based on their political viewpoints, beliefs and political party affiliation, as reflected by their past voting history, that have tended to favor Republicans over Democrats by making it far

more likely that they will be able to elect a Republican to the State Senate who

shares their political beliefs and opinions, and is a member of the same political

party as their own.

87.

The Republican majority in the Legislature used political classifications, as

reflected by the voting histories of Democratic vs. Republican voters in the

precincts in Clarke County, as well as in the surrounding counties affected by SB

386 to draw the new Senate District boundaries in a manner that burdens the

representational rights of Democratic voters by dividing and disbursing voting

precincts with large Democratic majorities among Senate Districts that contain

large majorities of Republican voters.

88.

The applicable legal standard to political gerrymander cases was

summarized by Justice Kennedy in his concurring opinion in *Vieth v. Jubelirer*,

541 U.S. 267 (2004).

> The First Amendment analysis concentrates on whether the legislation
> burdens the representational rights of the complaining party's voters
> for reasons of ideology, beliefs or political association. . . . *Id.* at 315.
> . . . .
> The inquiry is not whether political classifications were used. The
> inquiry instead is whether political classifications were used to burden
> a group's representational rights. If a court were to find that a state
> did impose burdens and restrictions on groups or persons by reason of

their views, there would likely be a First Amendment violation, unless the state shows some compelling state interest. *Id.*

89.

The burden imposed by SB 386 on the representational and associational rights of plaintiffs and other Democratic voters residing in Clarke County was not necessary to serve any legitimate and compelling state interest that was not being served by the existing plan, could not have been accomplished by the adoption of the FairMadison Plan, or in some other way that would not have burdened or interfered with the First Amendment representational and associational rights of the plaintiffs.

## Count Three

## (Violation of Art III § 2 ¶ 2 of the Georgia Constitution)

90.

The allegations of paragraphs 1 through 89 above are hereby incorporated by reference as allegations of paragraph 90 of Count Three of the complaint.

91.

SB 386 is *ultra vires*, null and void because it was adopted in violation of Article III, § 2, ¶ 2 of the Georgia Constitution, which provides:

**Apportionment of the General Assembly**

The general Assembly shall apportion the Senate and House districts. Such districts shall be composed of contiguous territory. *The apportionment of the Senate and House of Representatives shall be changed by the General Assembly as necessary after each United States decennial census.*

Ga. Const. Art. 3 § 2 ¶ 3 (emphasis added).

92.

The General Assembly is authorized to change the apportionment of state Legislative Districts only "*as necessary* after each United States decennial census" to reflect the changes in relative population by the districts since the previous census to make the districts "as nearly equal in population as is practicable" under the most current census data as required by the Equal Protection Clause of the Fourteenth Amendment, and the Georgia Constitution.

93.

The General Assembly is not authorized to reapportion state House or Senate Districts from one session to the next whenever a political party in power decides it can lock out the opposing party from having a political advantage or lock in its control of the seat in a particular geographic area.

## Irreparable Harm / Inadequate Remedy At Law

### 94.

Georgia is scheduled to conduct a primary election on July 18, 2006, a general election in November 7, 2006, and candidates seeking to run for the General assembly must qualify between 9:00 a.m. on April 24 and 12:00 noon on April 28, 2006.

### 95.

Each of the individual plaintiffs will be irreparably harmed if they are forced to vote in districts which were created in violation of the Federal and State Constitutions during the next and subsequent elections, for which harm they cannot be adequately compensated in an action at law for money damages.

### 96.

Plaintiff Jane Kidd has been irreparably harmed by SB 386, which was adopted after she announced her candidacy for Senate District 46 for the specific purpose of discriminating against her based upon her professed political beliefs, her voting record, and her political party affiliation, by making it more difficult, if not impossible, for her or any other Democrat residing in Athens-Clarke County to be elected to the Georgia State Senate.

WHEREFORE, Plaintiffs respectfully pray that:

(a)     the Court enter a declaratory judgment pursuant to 28 U.S.C. § 2201

        declaring (1) SB 386 to be unconstitutional, null and void to the extent

        it modifies this Court's Senate District plan;

(b)     the Court enter a preliminary and a permanent injunction pursuant to

        Fed.R.Civ.P. 65 restraining and enjoining the defendant individually

        and in her official capacities from enforcing or applying the district

        lines for Districts 46, 47, and 49 contained in SB 386 in any election

        for the State Senate in Georgia;

(c)     plaintiffs recover their reasonable attorneys' fees and costs pursuant to

        42 U.S.C. § 1988; and

(d)     plaintiffs have such other and further relief as may be just and

        equitable.

This 25th day of April, 2006.

Respectfully submitted,

Emmet J. Bondurant
Georgia Bar No. 066900
David G.H. Brackett
Georgia Bar No. 068353
Jason J. Carter
Georgia Bar No. 141669

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, Georgia 30309
Telephone: 404-881-4100
Facsimile: 404-881-4111
E-mail:     bondurant@bmelaw.com
            brackett@bmelaw.com
            carter@bmelaw.com          *Attorneys for Plaintiffs*