JANE KIDD, et al.,                )
                                  )
    Plaintiffs,                   )        CIVIL ACTION
                                  )        NO. 1:06-CV-0997- BBM
    v.                            )        (Three-Judge Court)
                                  )
CATHY COX, in her official        )
capacities as Secretary of State and )
Chair of the State Election Board, )
                                  )
    Defendant.                    )

## RESPONSE IN OPPOSITION TO
## MOTION FOR A PRELIMINARY INJUNCTION

**COMES NOW** Cathy Cox, Secretary of State, Defendant in the above-styled action, by and through Counsel Thurbert E. Baker, Attorney General for the State of Georgia, and makes this her response in opposition to the Plaintiffs' Motion for a Preliminary Injunction, filed with this Court on April 26, 2006, by showing and stating the following:

## INTRODUCTION

On Monday, April 24, at 9:00 a.m. candidates in Georgia's upcoming 2006 elections began qualifying to run for office. This qualifying period will close Friday, April 28, at noon. Halfway through this qualifying period, the Plaintiffs have come to this Court with an invitation that it assume the role of *deus ex*

*machina* in the upcoming elections in Georgia Senate Districts 46, 47 and 49, and overrule the legislative actions of a majority of the General Assembly. In doing so, they argue in a partisan approach that the lawful decisions of the state legislature should be discarded so that Plaintiff Kidd will have a better opportunity of success in the upcoming elections. The Plaintiffs' request for a preliminary injunction in this case should be denied.

## A.    STATEMENT OF THE CASE

On March 1, 2006, Governor Sonny Perdue signed S.B. 386 (Act No. 436), making it the law of Georgia. The bill provides for changes in the district lines only for three Georgia State Senate districts: 46, 47 and 49. A copy of that Act is attached to this Response as Exhibit A.[1]

Essentially, this bill accomplished the following. Senate District 46 previously consisted of all of Clarke, Oconee and Oglethorpe Counties and a portion of Madison County. Senate District 47, which borders S.D. 46 along the northern and western sides of the district, contained all of Barrow County and portions of Elbert, Jackson, Madison and Walton Counties. Senate District 49 is located northwest of S.D. 47 and contained all of Hall and part of Jackson County.

---

[1] It should also be noted that the General Assembly also enacted limited changes to House Districts 5, 12, 46, 48, 50, 51, 167 and 179 under H.B. 1137 (Act No. 435) of the 2006 session. This bill used essentially the same language as S.B. 386 in defining the limited scope of the House redistricting and is not a subject of this litigation by the Plaintiffs.

Senate Bill 386 eliminated the Madison county split and moved that county and all of Oglethorpe County into S.D. 47, so that district now consists of Barrow, Madison and Oglethorpe as whole counties, along with portions of Clarke, Elbert and Jackson Counties. District 46 retains all of Oconee County, and portions of Clarke and Walton Counties. Finally, all of Hall County remains in S.D. 49, along with a portion of Jackson County, but the split of Jackson County now moves from an irregular line to instead follow I-85, a clearly visible and identifiable geographic feature that is easier for voters to identify and for election officials to administer.

On April 20, 2006, the United States Department of Justice precleared these limited redistricting changes under Section 5 of the Voting Rights Act of 1964, as amended. A copy of that letter is also attached as Exhibit B to this response. On the date of this preclearance, almost one week before filing their complaint with this Court, the Plaintiffs filed a "Motion to Intervene as Plaintiffs and Brief in Support" in the case of *Larios et al. v. Cox,* Civil Action No. 1:03-CV-693-CAP (N.D. Ga.). *Larios* was a Three-Judge Court case that considered challenges to the statewide congressional, House and Senate plans passed in 2001 and 2002. *See Larios v. Cox,* 300 F. Supp. 2d 1320 (N.D. Ga.), *aff'd,* 542 U.S. 947 (2004). The *Larios* Court rejected the challenges to the Georgia congressional plan but eventually concluded that the House and Senate plans violated the constitutional principle of one-person/one vote and invalidated the State's legislative plans. *Id.*

After providing the legislature an opportunity to enact its own plans, and the General Assembly being unable to do so, the *Larios* Court then appointed a special master, who developed plans under the Court's supervision. Those plans were ultimately imposed as the Court's remedial plans for use by the State. *Larios v. Cox*, 314 F. Supp. 2d 1357 (N.D. Ga. 2004).

After having taken almost a week in their attempt to intervene in the closed *Larios* case, Plaintiffs then filed the instant action and have now dismissed their motion to intervene. In this case, Plaintiffs have requested the convening of a Three-Judge Court, which the Defendant has separately opposed, and moved for the issuance of a preliminary injunction to stop the use of the new Senate Districts 46, 47 and 49 in the upcoming election. The instant Response in Opposition to the Plaintiffs' request for injunctive relief is submitted in accordance with this Court's order of April 26. For the reasons set forth below, Plaintiffs are not entitled to the injunctive relief they seek and their motion should be denied.

## B. ARGUMENT AND CITATION OF AUTHORITY

> PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION IN ORDER TO PROVIDE A MORE COMPETITIVE POLITICAL ENVIRONMENT IN UPCOMING ELECTIONS SHOULD BE DENIED.

In their Motion for a Preliminary Injunction, Plaintiffs raise three claims to challenge the legislatively-approved changes to Senate Districts 46, 47 and 49.

First they argue that the population deviations in the new districts violate the principles of one-person/one-vote. Next they argue essentially that their political ambitions have been the victim of a political gerrymander, thus reducing the chances of one of the Plaintiffs to run for office successfully. Finally, Plaintiffs argue a novel pure state-law claim that the Georgia General Assembly cannot redistrict itself when it decides that such actions are appropriate. For the reasons outlined below, these claims provide no basis for the granting of a preliminary injunction by this Court.

1.  Standard of Review

"A preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). To obtain a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest." *Zardui-Quitana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985) (Emphasis added).

Plaintiffs have a particularly heavy burden in this case because they seek to enjoin enforcement of a state statute. "[P]reliminary injunctions of legislative enactments — because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits — must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts." *Northeastern Fla. Chapter*, 896 F.2d at 1285.

When a movant seeks to enjoin a government agency such as the Secretary of State here, "his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own affairs." *Rizzo v. Goode*, 423 U.S. 362, 378-79, 96 S. Ct. 698, 607-08 (1976). "This 'well-established' rule bars federal courts from interfering with non-federal government operations in the absence of facts showing an immediate threat of substantial injury." *Martin v. Metro. Atlanta Rapid Transit Auth.*, 215 F. Supp. 2d 1362, 1372 (N.D. Ga. 2002) (*quoting Midgett v. Tri-County Metro. Dist. of Or.*, 74 F. Supp. 2d 1008, 1012 (D. Or. 1999)). As the United States Supreme Court has instructed:

> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than

others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. *State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.* A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*McGowan v. State of Maryland*, 366 U.S. 420, 425-26, 81 S. Ct. 1101, 1105 (1961) (emphasis added).

    2.    Plaintiffs' One-Person/One-Vote Claim

In the first of their arguments, Plaintiffs argue that the alternations to Senate Districts 46, 47 and 49 "discriminates against voters" in Senate District 47 because the populations in the various districts are "not as nearly equal in population as practicable." Complaint, p. 2. This argument is without merit and does not provide a basis for the granting of a preliminary injunction.

On this claim, in addition to the heavy burden involved in the challenge to a state statute generally, Plaintiffs have another difficult burden: overcoming the presumption that "'an apportionment plan [such as this one] with a maximum population deviation under 10% falls within this category of minor deviations' that are insufficient to make out a prima facie case of discrimination in violation of the Fourteenth Amendment." *Larios v. Cox*, 300 F. Supp. 2d at 1340, *quoting Brown v. Thomson*, 462 U.S. 385, 842 (1983) (emphasis in *Larios* decision). Plaintiffs must show that they have a substantial likelihood of prevailing on the

merits.  In the context of this motion for preliminary injunction, that means that Plaintiffs must demonstrate that there is a substantial likelihood that they will prove that (1) the legislature's plan does not advance any rational state policy and (2) if they make that showing, that the population disparities "that have resulted from the pursuit of this plan exceed constitutional limits."  *Brown*, 462 U.S. at 483. Plaintiffs have not shown a substantial likelihood that they can meet their burden.

In order to address this claim, it is first necessary to look at the statistics involved in the redistricting plans involved here.  Copies of the *Larios* and revised Senate map, as well as the statistical information sheets for those maps, are included as a part of Plaintiffs' Exhibit B to the Motion for a Preliminary Injunction, pp. 14-26.

All of the numbers are based upon use of the 2000 Census numbers, which are the only uniform and reliable numbers available for such redistricting decisions.  Under the 2000 Census, Georgia had a population of 8,186,453 persons. There are 56 Senate districts.  That means that the "ideal" district size for a Senate district, i.e., if the State's population were equally divided between the 56 districts, is 146,187 persons. The "deviation" is the amount that the actual district size varies from this "ideal district size."

In the *Larios* plan, the following numbers were applicable to the three challenged Senate districts.

| District Number | Total Population | Deviation | % Deviation |
|---|---|---|---|
| 46 | 145,476 | -711 | -0.49% |
| 47 | 147,129 | 942 | 0.64% |
| 49 | 146,916 | 729 | 0.50% |

In the challenged 2006 plan under S.B. 386, the statistics are as follows:

| District Number | Total Population | Deviation | % Deviation |
|---|---|---|---|
| 46 | 145,103 | -1084 | -0.74% |
| 47 | 146,934 | 747 | 0.51% |
| 49 | 147,484 | 1,297 | 0.89% |

That means that the Plaintiffs' challenge to District 46 is that there are now 373 fewer people living in that district, under the Census 2000 numbers, than what the *Larios* Court assigned to the district. In District 47, there are 195 fewer people assigned to the district when the two plans are compared. Finally, there are 568 more people assigned to District 49, again under the Census 2000 numbers, than in the *Larios* plan. Out of a total population of 439,521 assigned to these three districts under the *Larios* plan, 1,136 persons have been affected or 0.258% of the population of these districts as a whole.

In reviewing state legislative redistricting plans, total population deviations under 10% are usually considered *de minimis* and it is the Plaintiffs' burden to

prove that no legitimate state interest supports the population deviation. *Larios*, 300 F. Supp. 2d at 1339, *citing Gaffney v. Cummings*, 412 U.S. 735 (1973). Plaintiffs' argument here, though, attempts to ignore that fundamental principle, which undermines their claims. Instead, Plaintiffs attempt to obfuscate the *de minimis* affect of S.B. 386 by asserting their argument that the General Assembly should have made different policy choices when it considered redistricting the three Senate districts. In trying to elevate their own political preferences to a constitutional dimension, Plaintiffs argue that the political process of redistricting led to a political result to their detriment and this should is therefore prohibited under the United States Constitution. Additionally, they argue that the General Assembly is not the proper body to determine which counties should be "split" between districts or how those "splits" should be drawn. *See* Plaintiffs' Brief in Support of Motion, pp. 7, 9-12, 19-20, 21-30.

It is unquestioned that in any redistricting process, policy choices will be made by the "map drawers." Indeed, the *Larios* Court struggled with that issue in developing its own Senate plan. *See Larios v. Cox*, 314 F. Supp. 2d 1357 (N.D. Ga. 2004) (Three-Judge Court). The Court, acting in place of the elected legislature in fashioning a remedy, made policy choices as well within the limitations permitted of a court in such a situation. *Id.* The *Larios* Court itself had to "tweak" its own map to accommodate comments and concerns it received on its

10

initial proposed map. The result was a map that did not confine itself to strict geographic barriers or to some "magic deviation", but which was far more constrained than a state legislature is in drawing its own maps. *Id. See also Connor v. Finch*, 431 U.S. 407 (1977); *Miller v. Johnson*, 515 U.S. 900, 915 ("Federal-court review of districting legislation represents a serious intrusion on the most vital of local functions. It is well settled that 'reapportionment is primarily the duty and responsibility of the State.'")

The General Assembly made certain choices with respect to the three changes to the Senate plan. The General Assembly chose to make Madison County whole and to split the area's largest county by far (by population), to make the dividing line in Barrow County follow the easily-recognizable boundary of I-85, to avoid split precincts and to make the districts more compact. All of these choices were recognized as legitimate considerations in the *Larios* decision, which was subsequently summarily affirmed by the United States Supreme Court. *Cox v. Larios*, 542 U.S. 947 (2004).

Given this context, it is the Plaintiffs' burden to prove that they have demonstrated a substantial likelihood of success in pursuing their "deviation" claim. The *Larios* Court, *citing Gaffney v. Cummings*, *supra*, recognized that "'minor deviations from mathematical equality among state legislative districts are insufficient to make out a prima facie case of invidious discrimination under the

Fourteenth Amendment so as to require justification by the State.'" 300 F. Supp. 2d at 1339. Only after a far-reaching and intense factual inquiry into the circumstances surrounding the drawing and adoption of the 2002 Senate plan could the *Larios* Court then conclude that, under those particular circumstances, the principle of one-person/one-vote had been violated. The Court created no "bright line" test as to the correctness of future policy decisions made under different circumstances by different people.

In this factual and legal posture, Plaintiffs have not demonstrated a substantial likelihood of success based upon the numerical deviations for the three challenged Senate districts. The argument that these miniscule deviations somehow amount to a constitutional violation of the magnitude to justify intruding into Georgia's political process does not carry the day.

Additionally, Plaintiffs claim irreparable harm by virtue of the fact that Plaintiff Kidd, who has already qualified to run for the Senate (Kidd Affidavit, p. 4, ¶ 10), will have to be a candidate in a district that is not as politically competitive as the previous *Larios*-drawn district. Other Plaintiffs claim irreparable injury because they are residing in districts where it is possible that the majority of their neighbors hold different political leanings than they do, so that their chosen candidates may not win election to the Senate. *See* Affidavits of Ann Blum, Dr. Murray Blum, and Andrea Suarez. These claims hardly amount to

"irreparable harm."  The Plaintiffs all operate within a political system with a myriad of differing political views being expressed and promoted.  That is the essence of American political culture.  It is not irreparable harm that their own political ideals are not shared by a majority of other voters assigned to their Senate district.

Finally, as to the balancing of the harm and the adverse effect of an injunction on the public interest, those factors weigh heavily in favor of the Defendant.  As noted above, qualifying has already begun and will end tomorrow at noon.  Candidates have made political and personal choices based upon the new, precleared Senate plan.  Voters are being notified of their new voting precincts and local election officials are implementing the changes provided for under S.B. 386.  *See* Transcript, April 27, 2006, Proceedings.

As demonstrated on this morning's conference call, the entry of an injunction at this late stage of the proceedings would clearly create confusion and disruption of the political process.  It would also introduce an immeasurable uncertainty into the political processes of the Senate race which may very well not be resolved prior to the July 18 primary or any subsequent elections.  This will not serve the public interest, but represents real and significant harm to the election process of the State of Georgia.

For all of these reasons, Plaintiffs "deviation" claim provides no basis for the granting of any injunctive relief.

2. Plaintiffs' Political Gerrymandering Claim

As the second of their arguments, Plaintiffs' dress up an old "political gerrymandering" claim in new clothes, now describing a redistricting decision of the General Assembly as an element of "viewpoint discrimination" that discriminates against their exercise of their rights to free speech, association and petition. This, too, provides no basis for the granting of any injunctive relief.

Plaintiffs' legal claims are reminiscent of those advanced by David Duke and his supporters in the early 1990's, when the Republican Party refused to accept Mr. Duke as one of its candidates for President during the 1992 presidential preference primary. *See Duke v. Massey*, 87 F.3d 1226 (11th Cir. 1996)[2]. In rejecting the claims by Mr. Duke and his supporters that the rejection of their political involvement amounted to viewpoint discrimination and infringed on their rights to free speech and association, the Eleventh Circuit noted:

> Although Duke is correct in identifying his First and Fourteenth Amendment interests, those interests do not trump the Republican Party's right to identify its membership based on political beliefs nor the state's interests in protecting the Republican Party's right to define itself. *Duke*, 954 F.2d at 1531. Therefore, the Committee, acting as representatives of the Republican

---

[2] *See also Duke v. Cleland, 783 F. Supp.* 600 (N.D.Ga.1992), *aff'd, Duke v. Cleland,* 954 F.2d 1526 (11th Cir.); *Duke v. Cleland*, 5 F.3d 1399 (11th Cir. 1993).

Party under O.C.G.A. § 21-2-193 , did not heavily
burden Duke's First Amendment and Fourteenth
Amendment rights when it excluded him from the
Republican Party's presidential primary ballot. . . .

The voters, supporters of Duke, claim that O.C.G.A. §
21-2-193 burdens their associational rights and their right
to vote for a candidate of their choice. The voters contend
that under *Lubin v. Panish*, 415 U.S. 709, 94 S. Ct. 1315,
39 L. Ed. 2d 702 (1974), the right to vote is "heavily
burdened" when the choices of candidates on primary
ballots are restricted and other persons are "clamoring" to
be listed on the election ballot. While *Lubin* does stand
for the proposition that the voters urge, it also stands for
the proposition that every voter cannot be assured that the
voter's preferred candidate will be allowed on the ballot.
*Lubin*, 415 U.S. at 716-17, 94 S. Ct. at 1320.

*Duke*, 87 F.3d at 1232-33.  Like the candidate and voters in *Duke*, the Plaintiffs

have the unfettered right to participate in the political process, but there is no

guarantee that they will participate in a system that is favorable to their own

political views.  The differences in political viewpoints are just that – differences.

They are not constitutional violations.

Additionally, the drawing of a redistricting plan is drawn which favors one

political party over another does not, in and of itself, state a claim upon which

relief can be granted, let alone form the basis for meeting the high burden of

granting a preliminary injunction.  In *Vieth v. Jubelirer*, 541 U.S. 267 (2004), the

United States Supreme Court addressed a redistricting plan that had far stronger

partisan provisions than anything suggested in this case.  Nonetheless, the Court

overall declined to find a violation of the Constitution in that situation and a plurality of the Court questioned whether any such claim could even be considered justiciable. *Id.*

The *Larios* Court rejected a similar claim made by the plaintiffs in that case, relying on the Supreme Court's decision in *Davis v. Bandemer*, 478 U.S. 109 (1986). Analyzing the *Larios* Plaintiffs' partisan gerrymandering claim brought under the Fourteenth Amendment, that Court concluded:

> As the Supreme Court made clear in *Davis*, "a group's electoral power is not unconstitutionally diminished by the simple fact of an apportionment scheme that makes winning elections more difficult, and a failure of proportional representation alone does not constitute impermissible discrimination under the Equal Protection Cause." *Davis*, 478 U.S. at 132. Because plaintiffs have not been "shut out" of the political process, defendant is entitled to summary judgment on each of the claims alleging an unconstitutional partisan gerrymander.

*Larios v. Cox*, No. 1:03-CV-0693-CAP (Order of December 17, 2003), Doc. 123, p. 7.

Similarly, with respect to the *Larios* Plaintiffs' partisan gerrymandering claim brought under the First Amendment, the court dismissed it, finding: "It is well established that the 'First Amendment protects political association as well as political expression.' *Buckley v. Valeo*, 424 U.S. 1, 15 (1976). However, it does not guarantee political success. *Badham v. Wu*, 694 F. Supp. 664, 675 (N.D. Cal. 1988), *aff'd*, 488 U.S. 1024 (1989)." *Id.* at 8.

Plaintiffs here make that same claim: winning will be more difficult. However, it is unlikely that Plaintiffs will prevail on that claim, based on the law as set forth above. Under the facts as outlined by the Plaintiffs, no constitutional violation has been demonstrated and there is no substantial likelihood that Plaintiffs would prevail on this claim that the political system discriminates against their own political views. As outlined above, Plaintiffs have failed to demonstrate any showing of irreparable harm. As *Duke* demonstrated, there is no right for a preferred candidate to even appear on a ballot, let alone have a district drawn to create a more favorable political climate. Furthermore, under *Davis* and *Larios*, Plaintiffs are not entitled to relief on their partisan gerrymandering claim simply because they have asserted that winning an election may be more difficult. The balancing of the equities here surely weighs against the granting of any injunctive relief.

3.    Plaintiffs' Novel Georgia Constitutional Claim

As the third and final argument in support of their claim for injunctive relief, Plaintiffs raise a new and novel claim that the General Assembly exceeded its authority under the State Constitution by redistricting in 2006 because that action was not necessary. This claim, too, fails to present a basis for the granting of relief.

Initially, Defendant notes that this claim raised by the Plaintiff presents a state law claim that has never been raised or decided in the Georgia courts, as far as the Defendant is aware. Certainly, Plaintiffs present no such authority to show that it is a question that has been resolved under state law. Given this, this claim should not be considered by the Court as a matter of comity, respect for the State constitutional processes and Eleventh Amendment considerations. Instead, Plaintiffs should factually present this case in a state forum where it can be factually and legally developed in an appropriate manner.

In *Common Cause et al. v. Cox et al.*, No. 4:05-CV-201-HLM, counsel for plaintiffs there (who is also counsel for Plaintiffs here) sought injunctive relief based on a claim under the State constitution. The *Common Cause* Court denied injunctive relief on that claim, concluding that "the Eleventh Amendment precludes the Court from entertaining Plaintiffs' claims asserted under the Georgia Constitution. The Court therefore concludes that Plaintiffs have failed to show a substantial likelihood of success on the merits." (Order of 10/18/05, Doc. 47 at 77.) The Court's conclusion there was based on the fact that the State of Georgia is the real party in interest and that the state constitutional claims constitute a cause of action against a state for violations of state law. *Id.* at 76.

Additionally, the Plaintiffs' claim as to the authority of the General

Assembly to redistrict itself as it deems appropriate borders on the specious.

Plaintiffs are correct that the Georgia Constitution provides:

> The General Assembly shall apportion the Senate and
> House districts. Such districts shall be composed of
> contiguous territory. The apportionment of the Senate
> and of the House of Representatives shall be changed by
> the General Assembly as necessary after each United
> States decennial census.

Ga. Const. Art. III, Sec. II, Para. II.  This provision, however, does not carry the

restrictive meaning which the Plaintiffs promote.  This provision provides first that

the General Assembly has the power to apportion both the House and Senate.  That

power is unfettered in the state Constitution and, as noted above, the General

Assembly has in the past freely engaged in multiple redistrictings, not merely those

following a decennial Census. Certainly, the Georgia General Assembly is the best

authority to determine that such actions are appropriate.

The constitutional provision, however, does go on to specify that there is at

least one circumstance that requires the General Assembly to address

reapportionment.  That is the conduct of a decennial Census.  If the results of the

Census demonstrate a need to adjust the reapportionment plans of the House, the

Senate or the congressional district, then the Constitution mandates the legislature

address that issue.  This assures compliance with the one-person/one-vote

principles espoused by the Plaintiffs and recognized in *Baker v. Carr*, 369 U.s. 186 (1962), and *Reynolds v. Sims*, 377 U.S. 533 (1964).

There is nothing in the context of this constitutional provision or in the history of Georgia which would indicate that this provision assuring a re-examination of reapportionment plans after a decennial Census is conversely also a restriction on any other powers provided to the General Assembly. This argument, therefore, presents no substantial likelihood of success for the Plaintiffs. Additionally, it presents no basis for finding any of the other requirements for the granting of a preliminary injunction in this case.

As a matter of both fact and law, the Plaintiffs have failed to meet their heavy burden of demonstrating all four of the criteria necessary for the granting of a preliminary injunction based on any of their claims presented to this Court. There is no substantial likelihood of the Plaintiffs' success on these claims, but the granting of a preliminary injunction would cause great confusion and disruption in the election process for these three Senate districts. The public would suffer real harm from such an action. On the other hand, the Plaintiffs are still fully able to actively participate in the political system, to express their views, to run for office, to vote, to speak out or engage in any of the myriad of other political rights that they are provided under the law. This case, therefore, presents no basis for the granting of the extraordinary relief of a preliminary injunction.

## CONCLUSION

**WHEREFORE**, for all of the above and foregoing reasons, the Plaintiffs

Motion for a Preliminary Injunction should be denied.

Respectfully submitted,

THURBERT E. BAKER
Attorney General of the State of Georgia
Georgia Bar No. 033887

.

/s/ Dennis R. Dunn
DENNIS R. DUNN
Deputy Attorney General
Georgia Bar No. 234098
dennis.dunn@law.state.ga.us

State Law Department
132 State Judicial Building
40 Capitol Square, S.W
Atlanta, GA 30334-1300
Telephone (404) 656-5614
Facsimile (404) 657-9932
dennis.dunn@law.state.ga.us


## Local Rule 7.1D Certification

By signature below, counsel certifies that the foregoing document was

prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.


/s/Dennis R. Dunn
DENNIS R. DUNN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day electronically filed the within and

foregoing **RESPONSE IN OPPOSITION TO THE MOTION FOR A**

**PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF

system, which will send notification of such filing to all parties to this matter via

electronic notification or otherwise:

        Emmet J. Bondurant, Esq.
        David G.H. Brackett
        Jason J. Carter
        Bondurant, Mixson & Elmore, LLP
        3900 One Atlantic Center
        1201 West Peachtree Street
        Atlanta, GA 30309

    This 27th day of April, 2006.

        /s/ Dennis R. Dunn
        DENNIS R. DUNN
        Deputy Attorney General
        Georgia Bar No. 234098
        dennis.dunn@law.state.ga.us